**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| ANGELA NAILS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV421-364 |
| | ) | |
| CAREY HILLIARD RESTAURANT | ) | |
| and THREE CAREY HILLIARD | ) | |
| RESTAURANT EMPLOYEES, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff, appearing *pro se* and *in forma pauperis*, filed a Complaint alleging objectionable conduct by employees at the Carey Hilliard restaurant, in violation of Georgia's "fair business practices Act."  Doc. 1 at 1.  Since her Complaint failed to allege facts demonstrating that the Court has subject matter jurisdiction over this case, she was directed to file an Amended Complaint.  Doc. 6 at 5-6.  She complied.  Doc. 11.  The Court now proceeds to screen her Amended Complaint.  *See* 28 U.S.C. § 1915(e).

## I.    BACKGROUND

Plaintiff's Amended Complaint is confusing and contains some apparently irrelevant allegations.  However, the Court must hold her pleading to a more lenient standard than those drafted by an attorney and construe it liberally.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  With that leniency in mind, the Court summarizes the apparently relevant allegations from the filing.

Plaintiff, who African American, alleges she was told to "leave from the inside" of Carey Hilliard Restaurant by one of its white employees.  Doc. 11 at 1.  Although Plaintiff explains she was asked to "go back to the outside drive to receive service," she alleges she never received her drink order though she waited outside in her car for the drink.  *Id.* at 2-3.  She also alleges that the white employee "began verbally cursing abusing the Plaintiff," including yelling to her, "your black [a**] will not be served."  *Id.* at 1-2.  When Plaintiff alerted a manager, the manager informed Plaintiff that "she was no longer wanted as a customer and would not be served" if she returned.  *Id.* at 2.

Plaintiff's Amended Complaint names "Carey Hilliard Restaurant" and "Three Carey Hilliard Restaurant Employees" as defendants.  Doc.

2

11 at 1.  Plaintiff does not include a specific request for relief, although she indicates that "[t]he amount of controversy damages is more than $75,000.00."  *Id.* at 3.

## II.   ANALYSIS

### A.   Subject Matter Jurisdiction

As an initial matter, the Court must confirm that it has jurisdiction over Plaintiff's claims.  *See* Fed. R. Civ. P. 12(h)(3); *see also* doc. 6 at 5 (identifying jurisdiction as "a threshold issue").  As with her initial Complaint, the Plaintiff's Amended Complaint "is silent as to the citizenship of the parties."  Doc. 6 at 5; *see also* doc. 11.  Therefore, she does not plausibly establish diversity jurisdiction.  28 U.S.C. § 1332(a); *see also MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005) (citing, *inter alia*, 28 U.S.C. § 1332).  Perhaps recognizing the absence of diversity jurisdiction, she alleges that the Court's subject matter jurisdiction arises by "the violation of Federal laws."  Doc. 11 at 1.

Pursuant to the well-pleaded complaint rule, a suit "arises under" federal law when "the plaintiff's statement of [her] own cause of action shows that it is based upon federal law."  *Vaden v. Discover Bank*, 556

U.S. 49, 60 (2009) (quotations, alteration, and citation omitted). "A complaint alleging a colorable federal cause of action confers district court jurisdiction even if the complaint is ultimately dismissed for failure to state a claim." *Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1238 (11th Cir.2008). Where a plaintiff's complaint expressly relies upon federal law, a district court does not err in exercising its subject-matter jurisdiction over that complaint. *King v. Farris*, 357 F. App'x 223, 225 (11th Cir. 2009).

Plaintiff refers to both the "Federal Civil Rights Act of 1964" and the "Equality Act 2010" as the bases for her claims. Doc. 1 at 1. The "Equality Act 2010" appears to refer to legislation passed in the United Kingdom. *See* https://www.gov.uk/guidance/equality-act-2010-guidance. It is not applicable here. Construing Plaintiff's reference to the Civil Rights Act of 1964 liberally, the Court will analyze Plaintiff's contentions under 42 U.S.C. § 2000a(a), commonly referred to as Title II of the Civil Rights Act of 1964. Additionally, because she is proceeding *pro se*, the Court will also consider her allegations through the lens of 42 U.S.C. § 1981. *See, e.g.*, *Paul v. Cheddar's Scratch Kitchen*, 2020 WL 2598355, at *2 (S.D. Ga. Mar. 30, 2020) (construing racial discrimination

allegations against a restaurant as brought under § 1981) *adopted* 2020 WL 2576185 (S.D. Ga. May 21, 2020).  Her express reliance on the Civil Rights Act of 1964, along with her allegations implicating another colorable federal cause of action, establishes this Court's jurisdiction.  *See King*, 357 F. App'x at 225.

### B.    Title II of the Civil Rights Act of 1964

Plaintiff expressly invokes the Civil Rights Act of 1964.  Doc. 11 at 1.  Title II of the Civil Rights Act prohibits discrimination on the basis of race in places of public accommodation.  42 U.S.C. § 2000a(a).  The Court accepts for screening purposes that the defendant restaurant qualifies as a place of public accommodation under the statute.  42 U.S.C. § 2000a(b) & (c) ("any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises" are places of public accommodation if they "serve[ ] or offer[ ] to serve interstate travelers or a substantial portion of the food which [they] serve[ ] ... has moved in commerce.").

Title II provides only for injunctive and declaratory relief.  42 U.S.C. § 2000a-3(a); *Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400, 401–02 (1968) ("A Title II suit is thus private in form only. When a

plaintiff brings an action under that Title, he cannot recover damages."). Nails does not expressly seek injunctive relief, and her assertion that the damages in this case exceed $75,000 suggests she seeks only monetary damages. *See generally* doc. 11.

Even if her Amended Complaint requested injunctive relief, her allegations do not establish that she has standing to seek an injunction. To establish standing, Nails must allege that she has suffered an "injury in fact," which requires an injury that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Kelly v. Harris*, 331 F.3d 817, 819–20 (11th Cir. 2003). " '[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). Rather, "in order to claim injunctive relief, a plaintiff must show 'a real or immediate threat that [she] will be wronged again—a likelihood of substantial and immediate irreparable injury.' " *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997) (quoting *Lyons*, 461 U.S. at 111).

6

Nails' Amended Complaint is based on a single event during which she was denied service. *See generally* doc. 11. She does not allege that there is a continuing risk of disparate treatment. *Id.* She has not expressed an intention to return to the restaurant. *Id.* Nails has, therefore, failed to state a claim under Title II of the Civil Rights Act of 1964. *See Kelser v. Shriners*, 2007 WL 484551, at *3 (M.D. Ala. Feb. 9, 2007) (finding that plaintiff lacked standing to bring a Title II claim where "[t]here are no allegations that the plaintiff is subject to any future harm; just allegations which support an inference of speculation of future harm"); *Schley v. Rest. Co.*, 2005 WL 1705501, at *2 (M.D. Fla. July 19, 2005) (dismissing a Title II claim where plaintiff failed to seek injunctive relief or allege facts supporting the issuance of an injunction, such as a "real or immediate threat that the plaintiff will be wronged again—a likelihood of substantial and immediate irreparable injury." (internal citations omitted)). Any claim under 42 U.S.C. § 2000a should be dismissed.

**C.   42 U.S.C. § 1981**

Plaintiff has, however, plausibly stated a claim under 42 U.S.C. § 1981, at least for screening purposes. Section 1981 provides that "[a]ll

persons ... shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens....," 42 U.S.C. § 1981(a), and it broadly protects "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," 42 U.S.C. § 1981(b).   The elements of a prima facie case for race discrimination under § 1981 are: "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007) (quoting *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004)).   Distilled down more simply, "in order to state a claim under § 1981, [Nails] must allege (1) intentional racial discrimination (2) that caused a contractual injury." *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021).

"To state a claim for direct racial discrimination, a plaintiff must allege the overt invocation of race by the alleged discriminator—for instance, the use of a racial slur or racially charged language." *Ziyadat*,

8

3 F.4th at 1296.  For purposes of screening, Nails' allegation that a white employee yelled to her "your black [a\*\*] will not be served" is sufficient to state such a claim.  *See* doc. 11 at 2; *see also Kinnon*, 490 F.3d at 891 (discussing evidence sufficient to constitute direct evidence of discriminatory intent); *Slocumb v. Waffle House, Inc.*, 365 F. Supp. 2d 1332, 1340-41 (N.D. Ga. 2005) (discussing restaurant employer's potential liability for its staff's allegedly tortious actions).  Nails has also sufficiently alleged, solely for purposes of screening, that the alleged discrimination caused her contractual injury, since she expressly alleges she was not served her drink.  *See* doc. 11; *see also Ziyadat*, 3 F.4th at 1297-98.

## D.    Service

Ordinarily, the Court would direct service of Plaintiff's Amended Complaint upon determining it plausibly stated at least one claim. However, Nails is in a unique position because after she filed this lawsuit, this Court implemented filing restrictions against her in another case after noting her "history of vexatious and frivolous litigation in this Court and others." *Nails v. Davis*, CV422-110, doc. 15-1 at 3 (S.D. Ga. July 11, 2022).  As part of those filing restrictions, if Plaintiff is permitted to

pursue a case, she must post a $1,000 contempt bond with the Clerk of Court, which is to be held by the Clerk and returned to Plaintiff at the conclusion of the case, "if she conducts her affairs appropriately." *Id.* at 4. Although Plaintiff filed this lawsuit prior to the imposition of the Court's filing restrictions against her, the same rationale justifying their imposition justifies requiring her to pay a contempt bond in this case, too. Therefore, before the Court directs service of the Amended Complaint, Plaintiff must either post a $1,000 contempt bond to protect the Court and the defendants from any vexatious conduct, or show cause why she ought be excused from doing so in this case.[1]

## III. CONCLUSION

Plaintiff's claims under 42 U.S.C. § 2000a should be **DISMISSED**. Plaintiff states a claim under 42 U.S.C. § 1981 sufficient to survive screening; however, she must either post a $1,000 contempt bond or show cause why she should be relieved from that requirement before the Court

---

[1] While the Court granted Nails leave to pursue this case *in forma pauperis*, *see* doc. 14, her application discloses monthly income and limited available funds, *see* doc. 13 at 2. While her disclosed monthly expenses exceed her income, *see id.* at 5, it is not entirely clear that Nails cannot economize to devote some amount toward the required bond. If she contends that the bond requirement should not be enforced in this case, she should disclose whether she concedes that she could provide a bond in some amount.

directs service of her Amended Complaint. Nails is, therefore, **DIRECTED** to either pay the required $1,000 bond into the registry of the Court or respond to this Order and Report and Recommendation no later than November 28, 2022 and **SHOW CAUSE** why that requirement should be modified or waived in this case.

      **SO ORDERED AND REPORTED AND RECOMMENDED**, this 8th day of November, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

11